UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN J. JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C16-6000-JPD<br><br><br><br>ORDER |

Plaintiff Justin J. Johnson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his application for child disability benefits, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff is currently 28 years old with a college degree, and was awarded supplemental security income and disability insurance benefits as of June 2013. Administrative Record ("AR") at 28, 91. His past work experience includes employment in as a daycare assistant, library assistant, and as a substitute paraeducator in a public school. AR at 69-70, 269, 282. Plaintiff was last gainfully employed in June 2013. AR at 269.

On September 17, 2013, Plaintiff filed a claim for child disability benefits. AR at 108,

ORDER - 1

240-46. Plaintiff asserts that he is disabled due to blindness, retinopathy of prematurity, chronic lung disease, and diabetic retinopathy. AR at 268, 312.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 132-34, 137-38. Plaintiff requested a hearing, which took place on February 18, 2015. AR at 42-99. On April 21, 2015, the ALJ issued a decision denying Plaintiff's claim for child disability benefits. AR at 28-36. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 5, 2016, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). For purposes of Plaintiff's child disability benefits application, his disability must have begun before he attained age 22. *See* 20 C.F.R. § 404.350(a)(5).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On April 21, 2015, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date.

2. Prior to attaining age 22, the claimant's retinal detachment of the right eye, and retinopathy/myopia of the left eye were severe impairments.

ORDER - 4

3. Prior to attaining age 22, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Prior to attaining age 22, the claimant had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations. He was unable to climb ladders, rope, or scaffolding. He had limited near visual acuity, limited far visual acuity, and limited field of vision. He was unable to assemble objects smaller than 3/4 of an inch. He could read print that was at least 1/8 of an inch in size. He could not work around heights, large moving machinery, or hazardous machinery.

5. The claimant had no past relevant work through April 22, 2011.

6. Prior to attaining age 22, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

7. The claimant was not under a disability, as defined in the Act, at any time prior to attaining age 22.

AR at 30-36.

## VI. ISSUES ON APPEAL

The principal issues[2] on appeal are:

1. Whether the ALJ erred in assessing the medical evidence;

2. Whether the ALJ erred in discounting Plaintiff's subjective testimony; and

3. Whether the ALJ erred in failing to discuss a statement written by Plaintiff's father;

Dkt. 16 at 1.

## VII. DISCUSSION

A. <u>The ALJ did not err in assessing the medical evidence.</u>

Given that Plaintiff was found disabled as of June 2013 (when Plaintiff was 24 years

---

[2] Plaintiff's opening brief also assigns error to the ALJ's RFC assessment and findings at step four, but only reiterates arguments made elsewhere. Dkt. 16 at 14. These arguments need not be addressed separately.

ORDER - 5

old), the issue before the ALJ in this child disability case is whether his disability began before he turned 22. Plaintiff presented no vision testing dating to the time period before he turned 22. The medical exhibits consist of Plaintiff's birth records, describing his premature birth and related eye problems; a consultative examination report conducted by an ophthalmologist in June 2013; and treatment notes generated by Plaintiff's optometrist after he turned 22, along with statements from the optometrist summarizing Plaintiff's condition. AR at 389-424. The State agency consultants found that Plaintiff met a listing based on the consultative examination and was therefore disabled, but found that he had not shown that he was disabled before his 22nd birthday for purposes of his child disability application. AR at 104, 112. A State agency medical consultant also found that Plaintiff's vision had declined after he was 22. AR at 122.

Plaintiff concedes that his medical records do not establish that he met a listing before his 22nd birthday, but argues that the ALJ erred in assessing his limitations based on a failure to account for and address all of the medical evidence. The Court will address Plaintiff's specific contentions in turn.

1. *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other

evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

//

2. *Leonard Seifter, M.D. & Joseph Dolezal, O.D.*

Dr. Seifter examined Plaintiff in October 2013 and opined that his vision loss was irreversible and permanent, and that his left eye vision with correction was 20/200+1, and he had had a prosthetic right eye since childhood. AR at 400. Dr. Seifter diagnosed Plaintiff with "[r]etinopathy of prematurity with poor vision both eyes since childhood." *Id*. Dr. Seifter's test results established that Plaintiff met a listing and were cited by State agency medical consultant Alnoor Virji, M.D., as the basis for the award of benefits. AR at 103.

Plaintiff's treating optometrist, Dr. Dolezal, provided a number of statements describing Plaintiff's vision, all dated after Plaintiff's 22nd birthday. In June 2014, he stated that Plaintiff's best corrected vision in his remaining left eye was 20/200 at distance and 20/100 at near point, and that his eye tremor made it difficult for him to read. AR at 406. Dr. Dolezal further provided that Plaintiff's "problematic vision has been at this level for as long as I have seen him and we have no significantly better treatment option at this time." AR at 406. The following month, Dr. Dolezal completed a form medical source statement indicating that Plaintiff's best corrected vision in his remaining left eye was 20/60, and that he had an eye tremor that caused him to require large-print text in order to read. AR at 421-22. At that time, he indicated that Plaintiff could drive. AR at 422. In February 2015, Dr. Dolezel completed another form medical source statement, stating that Plaintiff's best corrected vision in his left eye was 20/200, that he required large-print text in order to read, and that he could not drive. AR at 423-24.

The ALJ gave "minimal weight" to the opinions of Dr. Seifter, Dr. Dolezal, and Dr. Virji for purposes of establishing Plaintiff's vision ability before his 22nd birthday, because none of the opinions indicated the onset of Plaintiff's listing-level 20/200 vision. AR at 33. To the extent that Dr. Dolezal claimed that Plaintiff's vision had remained the same over the

ORDER - 8

entire 15 years of treatment, the ALJ found this statement to be inconsistent with Dr. Dolezal's treatment notes (none of which predated Plaintiff's 22nd birthday), which showed that Plaintiff's left-eye corrected vision was 20/70 at a distance and 20/40 at near point in May 2011. AR at 34 (citing AR at 420). The ALJ also noted that Dr. Dolezel tested Plaintiff's left-eye uncorrected vision at 20/150 at a distance in August 2012, and documented no testing with correction. AR at 34 (citing AR at 415). And in August 2013, Plaintiff reported to Dr. Dolezal that his "vision might have changed[.]" AR at 407. At that time, Dr. Dolezal documented 20/200 uncorrected vision at a distance in Plaintiff's left eye. AR at 408. The ALJ cited these variant test results as evidence that undermines Dr. Dolezal's statement that Plaintiff's vision had remained at the same level for his entire treating relationship. AR at 34. This reasoning is specific and legitimate. *See Bayliss*, 427 F.3d at 1216 (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

Plaintiff argues that the ALJ erred in failing to discuss and credit Dr. Dolezal's statements regarding his eye tremor, which made reading difficult and caused him to need large-print text, and made bright light uncomfortable. Dkt. 16 at 5-6 (citing AR at 406, 421). But these limitations were mentioned only in statements describing Plaintiff's functioning after his 22nd birthday. *See* AR at 45-47 (Plaintiff's counsel's representation at the hearing that Dr. Dolezal's medical source statements address current functioning, rather than prior to age 22). For the reasons previously explained, the ALJ did not err in discounting Dr. Dolezal's medical source statements for purposes of establishing disability prior to age 22.

3. *Non-examining sources*

Plaintiff assigns error to the ALJ's crediting the State agency medical consultants, arguing that non-reviewing physicians' opinions are entitled to less weight than the opinions of

ORDER - 9

the treating optometrist, Dr. Dolezal. Dkt. 16 at 6. Plaintiff also notes that the State agency consultants did not acknowledge his congenital nystagmus. *Id*.

Although a non-examining source opinion is generally entitled to less weight, it "need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews*, 53 F.3d at 1041 (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)). Plaintiff has not shown that the State agency opinions were contradicted by all the other evidence in the record, such that the ALJ erred in affording weight to them. Instead, the State agency consultant opinions were, as found by the ALJ (AR at 34), consistent with the medical record as a whole, which confirms their probative value. *See* SSR 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996) (providing that State agency opinions are entitled to weight so far as they are supported by the record). Accordingly, the Court finds no error in the ALJ's assessment of the State agency opinions.

The ALJ gave significant weight to the State agency opinions, but gave greater weight to the opinion of the testifying medical expert, ophthalmologist Patrick McCaffery, M.D. AR at 34. Dr. McCaffery reviewed the entire record and noted the inconsistencies between Plaintiff's recent vision testing and the earlier records, as well as his description of his functioning before age 22. AR at 48-68. Plaintiff objects to the ALJ's assessment of Dr. McCaffery's testimony, arguing that the ALJ should have given more weight to Dr. Seifert's opinion because he actually examined Plaintiff. Dkt. 16 at 6. But Dr. Seifert's opinion does not address Plaintiff's vision functioning before age 22, which is the only relevant question before the ALJ. And although Plaintiff contends that Dr. McCaffery did not acknowledge his congenital nystagmus (Dkt. 16 at 6), Dr. McCaffery did indeed refer to Plaintiff's nystagmus during his testimony, and offered an opinion as to how it impacts his functioning. AR at 54, 56, 67. Plaintiff has not identified an error in the ALJ's assessment of Dr. McCaffery's

ORDER - 10

testimony.

B.  <u>The ALJ did not err in discounting Plaintiff's subjective testimony.</u>

The ALJ credited Plaintiff's testimony to the extent that he complained of a lifelong visual impairment, but rejected his testimony to the extent that he indicated his visual impairment was disabling prior to his 22nd birthday, in light of (1) medical evidence showing that his vision worsened after he became 22, and (2) evidence that he worked before he turned 22.  AR at 32-33.  Plaintiff argues that the ALJ erred in assessing his testimony, and the Court will address Plaintiff's contentions in turn.

    1.    *Legal standards*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3]  *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

---

[3] In SSR 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

2. *Medical evidence*

The ALJ cited medical evidence that contradicts Plaintiff's allegation that his vision impairment had been equally severe before and after his 22nd birthday. AR at 32-33. Plaintiff argues that the ALJ's errors in assessing the medical opinion evidence tainted his assessment of his own subjective testimony (Dkt. 16 at 7), but as explained *supra*, the Court rejects Plaintiff's assignment of error regarding the ALJ's assessment of the medical evidence.

Plaintiff also argues that the ALJ's recitation of the medical evidence does not amount to a clear and convincing reason to discount subjective testimony. Dkt. 16 at 8 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015)). But this case is distinguishable from *Brown-Hunter* because the ALJ specifically explained how the cited medical evidence

---

evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). However, this change is effective March 28, 2016, and not applicable to the 2015 ALJ decision in this case. *See* 2016 WL 1237954 (Mar. 24, 2016). The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

contradicted an allegation that Plaintiff's vision remained stable at disabling levels before and after age 22. AR at 32-33.

Plaintiff has not shown or even argued that the evidence cited by the ALJ does not contradict an allegation that his vision impairment remained stable before and after his 22nd birthday, and this contradiction in the medical evidence is a clear and convincing reason to discount his testimony. *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

3. *Work history*

The ALJ described Plaintiff's work history, and indicated that Plaintiff's ability to work at a movie theater, library, and daycare prior to age 22 showed that he retained more vision abilities than alleged. AR at 33. The ALJ noted that Plaintiff's job duties involved reading books, performing custodial duties, supervising children, and organizing books according to call numbers. *Id*. The ALJ also found that Plaintiff did not describe any special accommodations in his library and daycare jobs. *Id*.

Plaintiff argues that the ALJ overlooked his testimony regarding special accommodations. Dkt. 16 at 8. But Plaintiff testified about special accommodations he received in a paraeducator job he performed after he turned 22, not the jobs relied upon by the ALJ. *See* AR at 69-70, 73-74, 83. With respect to the jobs relied upon by the ALJ, Plaintiff emphasizes that these jobs were work-study jobs and the form description of the jobs did not have a place to indicate if the job involved special accommodations. Dkt. 16 at 8-9. This lack of evidence of special accommodations does not, however, establish that the ALJ erred in finding that Plaintiff "did not refer to any special accommodations during his work in 2009 and 2010[.]" AR at 33.

ORDER - 13

Plaintiff then goes on to summarize his subjective statements at length, but none of this portion of the brief identifies errors in the ALJ's decision. Dkt. 16 at 9-11.

Because Plaintiff has not shown that the ALJ erred in relying on medical evidence and his work history to reject that his allegation of a disabling vision impairment before age 22, the ALJ's findings are affirmed.

C.   <u>Any error in the ALJ's assessment of lay evidence is harmless.</u>

Plaintiff's father testified at the hearing, and wrote two statements regarding Plaintiff's condition. AR at 86-89, 319-26, 342. The ALJ gave some weight to his hearing testimony, discounting it to the same extent as Plaintiff's testimony for the same reasons, but did not explicitly discuss his written statements. AR at 33. Plaintiff argues that the ALJ erred in assessing his father's statements.

    1.   *Legal standards*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(a)(4). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. If an ALJ chooses to discount testimony of a lay witness, he or she must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

    2.   *Plaintiff's father's hearing testimony*

The ALJ credited Plaintiff's father's testimony to the extent he described vision problems, but rejected it to the extent he claimed Plaintiff's vision problems were disabling

before age 22, in light of medical evidence showing Plaintiff's vision worsened since age 22 and evidence showing he had "adequate left-sided vision through 2011." AR at 33.  Plaintiff argues that because these reasons were not adequate reasons to discount his own statements, they were not germane reasons to discount his father's testimony.  Dkt. 16 at 13.  As explained *supra,* however, the ALJ's reasons were clear and convincing with respect to Plaintiff's testimony, and also constitute germane reasons to discount Plaintiff's father's similar testimony.

### 3. *Plaintiff's father's written statements*

Although the ALJ failed to explicitly discuss Plaintiff's father's written statements, any error is harmless because those statements were cumulative of testimony the ALJ addressed explicitly and sufficiently.  *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (finding harmless error where the ALJ failed to explicitly reject lay testimony that did not describe limitations beyond those described by the claimant, whose testimony was validly rejected by the ALJ).  Although Plaintiff argues on reply that his father's statements "did not merely repeat [his own] testimony" (Dkt. 18 at 9), he has identified no meaningful differences, such that the ALJ's failure to explicitly discuss Plaintiff's father's written statements prejudiced him.  Accordingly, the Court finds that any error in the ALJ's failure to discuss Plaintiff's father's written statements is harmless.

## VIII. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 18th day of August, 2017.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
Chief United States Magistrate Judge